Hon. Lauren King

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. AHMED BASHIR<br><br>                            Plaintiff,<br><br>  v.<br><br>THE BOEING COMPANY, et al.,<br><br>                           Defendants. | CASE NO. 2:19-cv-00600-LK<br><br>PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 1
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1

**INTRODUCTION**

2

Relator Ahmed Bashir ("Bashir" or "Relator") files this Response in Opposition to

3

Defendants' The Boeing Company ("Boeing") and Jerry Dunmire ("Dunmire") (collectively, the

4

"Defendants") Motion to Dismiss (Dkt. No. 104) (the "Motion") Relator's Second Amended

5

Complaint (Dkt. No. 96). For the reasons set forth herein, Defendants' Motion is without merit

6

and should be denied.

7

A false certification claim under the False Claims Act ("FCA") requires: (1) a false

8

statement or fraudulent course of conduct; (2) made with scienter; (3) that was material; thereby

9

(4) causing harm. Defendants challenge whether Relator's Second Amended Petition plausibly

10

alleges the first (falsity) and third (materiality) elements. Defendants made similar arguments

11

before.

12

On September 29, 2023, the Court entered its Order Granting the Motion to Dismiss filed

13

by Defendants (the "Order"). Dkt. No. 92. Therein, the Court found that Relator had sufficiently

14

alleged certain false claims but did not sufficiently allege the materiality of those false claims. *Id.*

15

at 20-22. Regarding the "falsity" element, the Court found Relator had not adequately alleged an

16

"express false certification" theory but did sufficiently allege an "implied false certification"

17

theory. *Id.* at 17-22. Regarding the "materiality" element, the Court inferred that Relator's First

18

Amended Complaint plausibly alleged the "magnitude" of Boeing's alleged FCA violations but

19

did not sufficiently address: (1) whether the Government's payment was conditioned on

20

compliance with the requirements at issue; or (2) how the government treated similar violations.

21

*Id.* at 23-25. The Order permitted Relator to amend his live pleading, which he did, curing the

22

deficiencies that were raised in the Order.

23

Defendants' Motion yet again asks the Court to dismiss this case before reaching its merits

24

and before Defendants have even answered the lawsuit. However, Relator's Second Amended

25

Petition cured the deficiencies identified in the Order and plausibly alleges facts demonstrating

26

that Boeing's claims for payment (both express and implied) were both false and material. To the

27

extent the Court holds otherwise (it should not), Relator requests further leave to amend.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 2
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400       **BARNARD**
SEATTLE, WASHINGTON 98119       **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132       **LAVITT LLP**

1

### STATEMENT OF FACTS

2

3       This action involves the materially false representations and certifications Boeing

4   knowingly made to the U.S. Government in connection with the DX-Rated $3.9 billion

5   "Presidential Aircraft Recapitalization" or "VC-25B" program to design, engineer, and

6   manufacture the next generation of Air Force One Aircraft for the President of the United States.

7   Dkt. No. 96 at ¶¶ 1-3. A Defense Priorities and Allocations System ("DPAS") rating of "DX-A1"

8   by the U.S. Government is one that is reserved for the most important and highest-priority

9   government defense projects. *Id.* at ¶¶ 5, 21-22, 29-32. The statutory requirements of a DX-A1

10  Rated contract are the most strict and stringent requirements imposed by Congress in defense

11  contracting. Failure to comply with every element of a DX-A1 rated order and the DPAS

12  regulations requires a written authorization and approval to proceed from the Secretary of Defense

    and/or Congressional approval.

13      Boeing's prime contracts with the U.S. Government in connection with the Air Force One

14  Programs required Boeing (and its subcontractors) to represent and certify to the U.S. Government

15  that both Boeing, as well as Boeing's subcontractors (such as GDC) were in full compliance with

16  all contract provisions and mandatory federal statutes and regulations incorporated into those

17  prime contracts (expressly and by operation of Federal law). *Id.* at ¶¶ 29-49. These representations

18  and certifications were required to be made at the time of acceptance, as well as each time Boeing

19  sought or obtained government funds in connection with the Air Force One Programs. *Id.* at ¶ 165.

20  Each time Boeing requested or received milestone payments from the U.S. Government in

21  connection with the $3.9 billion VC-25B Program, it did so knowing that mandatory and material

22  federal statutes, regulations, and contractual requirements under the prime contract had been and

23  were being violated. *Id.* at ¶ 154.

24      Specifically, this action involves Boeing's false representations, omissions, and

25  certifications concerning:

26

27

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 3
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

- Boeing's failure to adhere to the DPAS requirements and Boeing's knowingly false certifications and representations that it was in violation of the Air Force One prime contracts, and 48 C.F.R. § 52.211-15. Dkt. No. 96 at ¶¶ 29-35;

- Boeing's failure to disclose that GDC was financially insolvency and incapable of performing the Air Force One Subcontracts in violation of the DPAS Requirements and 48 C.F.R. §§ 9.103, 9.104-1, and 9.104-4. *Id.* at ¶¶ 36-40, 84-87, 101-104;

- Boeing's failure to disclose GDC's foreign ownership and control by the Saudi Government in violation of numerous national security laws and regulations, including the Security Requirements set forth in 48 C.F.R. § 52.204-02, 32 C.F.R. Part 117 the National Industrial Security Operating Manual ("NISPOM"), and 48 C.F.R. § 252.225-7002. *Id.* at ¶¶ 41-46, 52-60, 81-87, 95-100;

- Boeing's knowingly false certification that certain work had been performed and milestones had been met when Boeing knew that it had not in violation of federal law and Air Force One prime contracts. *Id.* at ¶¶ 136-145;

- Boeing's failure to disclose that GDC was prioritizing the completion of the Saudis' Aircraft ahead of the Air Force One Subcontracts in violation of material and mandatory Government defense contracting statutes and regulations. *Id.* at ¶¶ 4-5, 31-32, 69-71, 87, 102, 117, 167;

- Boeing's failure to disclose that GDC was misappropriating U.S. Government funds towards the completion of multiple aircraft owned by GDC's true beneficial and controlling owners – the Saudi Government. *Id.* at ¶¶ 4-5, 59-60;

- Boeing's false representations and certifications in connection with the source selection process for GDC in violation of 48 C.F.R. § 52.244-5 titled "Competition in Subcontracting" and 48 C.F.R. § 52.203-13 titled "Contractor Code of Business Ethics and Conduct." *Id.* at ¶ 47; and

- Boeing's violations of federal anti-kickback and fraud detection/reporting statutes. *Id.* at ¶ 50.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 4
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1   These disqualifying factors were known by Boeing before it unlawfully awarded GDC the

2   Air Force One Subcontracts, as well as each time Boeing sought and obtained milestone payment

3   from the U.S. Government in connection with Air Force One. *Id.* at ¶¶ 165-170.

4   Originally, the next generation Airforce aircraft were scheduled to be delivered by Boeing

5   to the USAF and the President of the United States by 2024. As a result of Boeing's unlawful

6   conduct that is no longer the case. The new Air Force One aircraft are currently projected to be

7   delivered three years late and over a billion dollars over budget. Boeing's unlawful outsourcing of

8   the engineering, design, and completion of Air Force One to GDC in violation of the material

9   contractual provisions for the VC-25B Program has resulted in at least a three-year delay in

10   delivering the next generation Air Force One aircraft to the U.S. Government and will cost at least

11   an additional $750 million to maintain the existing Air Force One aircraft (which will be borne by

12   the taxpayers). *Id.* at ¶¶ 161-163.

13   The facts alleged in the Second Amended Complaint plausibly state a claim for False

14   Claims Act liability and, accordingly, Defendants' Motion should be denied.

## LEGAL STANDARD

16   A motion to dismiss under Rule 12(b)(6) is a disfavored motion. To survive dismissal under

17   Rule 12(b)(6) scrutiny, a plaintiff must plead factual content "that allows the court to draw the

18   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

19   U.S. 662, 678 (2009). It should only be granted when, after reviewing all the facts pleaded in the

20   light most favorable to plaintiff, the court concludes a plaintiff has no plausible claim. *United*

21   *States v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1245 (E.D. Cal. 2019) (citing

22   to *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content

23   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

24   alleged." *Iqbal*, 556 U.S. at 678.

25   Because FCA claims sound in fraud, they must also satisfy the particular requirement of

26   Rule 9(b). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016).

27

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 5
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Accordingly, an FCA complaint must state with particularity the circumstances constituting fraud; in other words, "the who, what, when, where, and how of the misconduct charged." *United States ex rel. Swoben v. United Healthcare Ins.*, 848 F.3d 1161, 1180-81 (9th Cir. 2016); *see UPPI LLC v. Cardinal Health, Inc.*, No. 21-35905, 2022 WL 3594081, at *2 (9th Cir. Aug. 23, 2022). Under Rule 9(b), allegations of an FCA defendant's knowledge, scienter, and state of mind "may be averred generally" and are not subject to a motion to dismiss on that basis. *United States ex rel. Smith v. Boeing Co.*, 505 F. Supp. 2d 974, 985 (D. Kan. 2007) (denying Boeing's motion to dismiss on similar facts and allegations). In applying this well-established standard here, Defendants' Motion should be denied.

ARGUMENT

**I.     The Second Amended Complaint plausibly alleges facts supporting the "falsity" element of an FCA claim.**

The FCA imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) (citing 31 U.S.C. § 3729(a)(1)(A)). A claim under the FCA requires a showing of "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). The Court construes the FCA broadly, as it is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Id.* at 1170. Such broad construction gives rise to a number of doctrines "that attach potential [FCA] liability to claims for payment that are not explicitly and/or independently false." *Id.* at 1171.

The falsity requirement can be satisfied by "express false certification," which means that the entity seeking payment falsely certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted, or by "implied false certification," which occurs when an entity has previously undertaken to expressly comply with a law, rule, or

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD

IGLITZIN &

LAVITT LLP

regulation but does not, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim. *Rose*, 909 F.3d at 1017-18.

The Order found that Relator's First Amended Complaint sufficiently alleged an implied false certification but not an express false certification. Dkt. No. 92 at 17-22. Despite that Order, Boeing once again attacks both. Each is addressed in turn.

**A. Relator plausibly alleges an implied false certification claim under the FCA.**

To establish falsity under an implied false certification theory, a relator must establish that claim does not merely request payment, but also makes specific representations about the goods or services provided, and that the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. *Rose*, 909 F.3d 1017-18; *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1001 (9th Cir. 2010); *U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*, 2013 WL 1499319, at *4 (E.D. Cal. Apr. 11, 2013) ("[S]ubmission of a claim for payment acts as an implicit reaffirmation of compliance [with payment requirements]").

In *Escobar*, the Supreme Court explicitly declined to "resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment." *Escobar*, 579 U.S. at 188. Nor were the two conditions intended to describe the outer reaches of FCA liability: the Court stated that liability could be found "*at least*" where these conditions were satisfied. *Id.* at 190 (emphasis added). Thus, *Escobar* leaves undisturbed cases holding that a claim is "false" if it is statutorily ineligible for reimbursement. *See e.g., Ebeid,* 616 F.3d at 1001; *Rose*, 909 F.3d at 1020. In *Ebeid*, the Ninth Circuit reiterated that a complaint need only make "allegations that the government paid claims because it believed [claimants were] in compliance with laws upon which payment was conditioned" to raise an implied false certification theory. *Ebeid*, 616 F.3d at 999 & n.5.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 7
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    In its Motion, Boeing erroneously argues that Relator's allegations are conclusory. Dkt.

2    No. 104 at 8. This is false and Boeing misapplies the law in the Ninth Circuit in support of this

3    argument. The Court previously rejected Boeing's argument that Relator's implied false

4    certification claims fails. Dkt. No. 92 at 20. In doing so, the Court correctly held in its Order that

5    Relator has sufficiently alleged the 'who, what, when, where, and how' of Boeing's fraud on the

6    government by alleging a 'laundry list' of violated federal regulations despite [its] certification of

7    compliance." *Id.* at 20. The Court also correctly held in its Order that "It is enough to 'allege

8    particular details of a scheme to submit false claims paired with reliable indicia that lead to an

9    inference that claims were actually submitted.'" *Id.* at 21 (citing *Ebeid*, 616 F.3d at 998-99). The

10   Second Amended Complaint is more robust on these points, and the Court's analysis should not

11   change.

12   The Second Amended Complaint specifically sets forth the strict contractual, statutory, and

13   regulatory requirements that must be met and certified by Boeing in connection with performing

14   work on Air Force One. Dkt. No. 96 at 25-51. These regulatory requirements were expressly

15   referenced and incorporated into the prime contracts between Boeing and the U.S Government

16   and, as further addressed in the materiality section below, are all conditions to payment. *Id.; see*

17   *also* Dkt. No. 96-1 at 1, 14, 16-17, 92-93. *See e.g., U.S. ex rel. Brown v. Celgene Corp.*, 2014 WL

18   3605896, at *2 (C.D. Cal. July 10, 2014) (holding that under *Ebeid*, "[a] claim is false under an

19   implied certification theory when it contains no express statement regarding compliance with a

20   statute or regulation but, *by the very fact that it has been submitted*, falsely implies compliance

21   with any statutory or regulatory precondition to obtaining the requested government benefit")

22   (emphasis added).

23   The Second Amended Complaint very plainly and specifically connects Boeing's failure

24   to disclose noncompliance with these material statutory, regulatory, and contractual requirements

25   with Boeing's receipt of hundreds of millions of dollars in progress/milestone payments under the

26   VC-25 Programs. Dkt. No. 96 at 51, 101-104, 142-144, 156-158, 166-172. Boeing cannot

27   reasonably contend that Relator's allegations somehow leave them in the dark as to where to look

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 8
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

**TEL** 800.238.4231 | **FAX** 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

or what to defend. *See Boeing*, 505 F. Supp. 2d at 983 (denying Boeing's motion to dismiss and finding relator's "allegations sufficient to put [Boeing] on notice of the basis of the FCA claims. Greater detail is not required at the pleading stage."). Reading these allegations together, they plausibly state a claim for implied false certification under the FCA. Accordingly, Boeing's Motion on this point should once again be denied.

### B. Relator plausibly alleges an express false certification claim.

With respect to Relator's express false certification claim, the Court previously held the allegations were insufficient because some of them were alleged on information and belief. Dkt. No. 92 at 19. That deficiency has now been cured and the Second Amended Complaint further clarifies the basis for Relator's express false certification claims.

Throughout the Second Amended Complaint, Relator alleges that the prime contracts between Boeing and the U.S. Government expressly incorporates the FARs and DFARs discussed above and expressly require Boeing to certify compliance with these material requirements annually, as well as each time Boeing seeks and obtains progress payments from the U.S. Government. Dkt. No. 96 at ¶¶ 26, 31, 38, 166; *see also* Dkt. No. 96-1 at 1, 14, 17 (concerning certification requirements). Pursuant to 48 C.F.R. § 52.204-19, Boeing's "representations and certifications include those completed electronically view the System for Award Management (SAM), are incorporated by reference into the contract." These allegations are sufficient to state a plausible false certification claim. *See Ebied*, 616 F.3d at 998-99; *Campie*, 862 F.3d at 898-900.

Additionally, Relator alleges that Boeing falsely certified inaccurate and incomplete design drawings prepared by GDC in order to receive hundreds-of-millions in milestone payments under the VC-25B Program." Dkt. No. 96 at ¶¶ 3, 5, 31, 136-144, 167. Boeing certifying completion of work that it knows was not actually done in accordance with the prime contract constitutes an adequately pleaded express false certification claim. *See e.g.*, *Boeing*, 505 F. Supp. 2d at 981-82; *United States v. Albinson*, 2010 WL 3258266, at *13-14 (D.N.J. Aug. 16, 2010) (finding the

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 9
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

government sufficiently pled an express false certification theory regarding work that was not actually completed).

## II.    Relator Satisfied the FCA Pleadings Standard with Respect to the Element of Materiality.

With respect to the element of materiality, Boeing is quick to point out that the standard is "demanding" to shield government contractors from "onerous and unforeseen FCA liability as a result of noncompliance with any of the potentially hundreds of legal requirements established by contract." Dkt. No. 104 at 9. It is true that the FCA is not designed to "punish[ ] garden-variety breaches of contract." *Escobar*, 579 U.S. at 194. But false promises of compliance with regulatory or statutory provisions incorporated into a government contract (whether certified or not) can constitute false statements under the FCA. *See Hendow*, 461 F.3d at 1172–75; *UPPI LLC,* 2022 WL 3594081, at *2. Courts are not hesitant to find that regulatory violations *are* material when there is record evidence that shows the regulatory and contractual provisions that were falsely certified "were important to the overall purpose of the contract." *United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1271 (D.C. Cir. 2010). That is exactly the case here.

In *Escobar,* the Supreme Court explicitly rejected a standard for implied certification claims that focuses exclusively on whether the Government expressly designates a contractual, statutory, or regulatory obligation as a condition of payment. *Escobar*, 579 U.S. at 190. Thus, the Ninth Circuit "view[s] *Escobar* as creating a 'gloss' on the analysis of materiality" – not a bright line elemental test. *Rose*, 909 F.3d at 1020 (internal citations omitted). In light of *Escobar*, courts must examine the particular facts of each case holistically in determining whether it is plausible that the regulatory and contractual provisions that were falsely certified were important to the overall purpose of the contract. *Id.*

Moreover, the Ninth Circuit has made clear that no "single fact or occurrence" determines materiality—"the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Winter ex rel. United States v. Gardens*

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 10
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

*Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1121 (9th Cir. 2020). Ultimately, because materiality depends on a holistic assessment, in many cases it is likely to be a determination for a jury. *Cf.* Restatement (Second) of Torts § 538 cmt. e (1977). At the motion to dismiss stage, the plaintiff need only plead enough facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011).

Applying this standard, the Second Amended Complaint pleads materiality with sufficient particularity and plausibility. As alleged in the Second Amended Complaint, Boeing was required to represent and certify that it (and its subcontractor GDC) would comply with the strict DPAS requirements for the highest priority DX-A1 defense contract. Dkt. No. 96 at ¶¶ 22-25. Strict adherence to the contractual and regulatory DPAS requirements was of the utmost importance for the VC-25A and VC-25B Programs. Otherwise, Boeing could not have been paid, because Congress required as much. *See* 48 CFR 48 C.F.R. § 52.211-15; 15 C.F.R. § 700.13-15 and 700.74-75; *see also UPPI LLC,* 2022 WL 3594081, at *4 (violation of regulations that preclude a defense contractor from being paid is sufficient to establish this materiality factor); *see also Rose*, 909 F.3d at 1020.

In the Order, the Court set out the relevant, but non-exhaustive factors for "materiality" post-*Escobar*: (1) whether the Government's payment was conditioned on compliance with the statutory, regulatory, or contractual requirement at issue; (2) the Government's past enforcement and treatment of similar violations (*i.e.,* the factors addressed in *Escobar*); and (3) the magnitude of the violation. Dkt. No. 92 at 24. It is important to note, however, that the test of materiality is a factor test, not an element test. Indeed, as the Ninth Circuit has held, while the Supreme Court in *Escobar* enunciated three scenarios bearing on materiality "none of them is necessarily required or dispositive." *Rose*, 909 F.3d at 1020-21. Nonetheless, Relator addresses each of these three non-dispositive factors below.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 11
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**A. Relator alleges facts showing the funds paid to Boeing were conditioned on Boeing's compliance with the governing statutory, regulatory, and contractual requirements that Boeing knowingly violated.**

Boeing argues that Relator "fails to cite any part of the 112-page Solicitation attached to his Second Amended Complaint, any specific statute, or any specific regulation conditioning payment on compliance." Dkt. No. 104 at 10. Not so.

Relator's Second Amended Complaint methodically cites the material regulations that were expressly incorporated into the prime contracts for the VC-25B Program and goes into detail explaining how Boeing violated each one. Dkt. No. 96 at ¶¶ 29-51. For example, Relator cites to the strict DPAS requirements Boeing was required to follow and certify compliance with as a condition to payment from the Government. *Id.* at ¶¶ 29-30. The DPAS requirements were expressly referenced and incorporated into the prime contracts. *Id.*; Dkt. No. 96-1 at 17:

> A. FEDERAL ACQUISITION REGULATION CONTRACT CLAUSES IN FULL TEXT
>
> 52.211-15  DEFENSE PRIORITY AND ALLOCATION REQUIREMENTS  (APR 2008)
>
> This is a rated order certified for national defense, emergency preparedness, and energy program use, and the Contractor shall follow all the requirements of the Defense Priorities and Allocations System regulation (15 CFR 700).

By statute, the DPAS requirements prohibited Boeing from accepting a DX-A1 Rated Order if it knew or should have known that it or its subcontractors (specifically, GDC) could not timely meet the contractual milestones. 15 C.F.R. § 700.13(b)(1). Moreover, the DPAS requirements mandated that Boeing, after accepting the prime contract and discovering that performance would be significantly delayed, mainly due to GDC, to: (1) immediately notify the Government, (2) fully disclose the reasons for the delay, and (3) advise as to the new performance date. Dkt. No. 96 at ¶ 31 (citing 15 C.F.R. § 700.13(d)(3)).

The DPAS requirements are Congressionally mandated regulations that are essential to the overall purpose of the Air Force One contract. Indeed, they are a condition to being paid. *See Celgene Corp.*, 2014 WL 3605896, at *2 (holding that under *Ebeid*, "[a] claim is false under an

implied certification theory when it contains no express statement regarding compliance with a statute or regulation but, *by the very fact that it has been submitted*, falsely implies compliance with any statutory or regulatory precondition to obtaining the requested government benefit") (emphasis added). Thus, materiality is established, and the Ninth Circuit has not been shy to find as much on much weaker facts. *See, e.g.*, *Rose*, 909 F.3d at 1020; *UPPI*, 2022 WL 3594081, at *4; *Hendow*, 461 F.3d at 1176-77.

In *Rose*, the Ninth Circuit observed "[h]ad Defendant not certified in its program participation agreement that it complied with the incentive compensation ban, it could not have been paid, because Congress required as much. 909 F.3d at 1020. The same principle holds true here. As alleged in the Second Amended Complaint, Congress expressly implemented strict rules and regulations defense contractors are required to follow in connection with accepting and performing a DX-A1 Rated Order or they are otherwise ineligible to participate or be paid. Dkt. 96 at ¶¶ 29-35; *see also* 48 C.F.R. § 52.211-15; 15 C.F.R. § 700.13-15 and 700.74-75. Boeing knowingly violated them yet submitted claims for payment in the hundreds of millions anyway.

In *Hendow*, the Ninth Circuit dispelled of a defendant's attempt to distinguish between a condition to *participation* versus a condition to *payment*, holding:

> If we held that conditions of participation were not conditions of payment, there would be no conditions of payment at all—and thus, [a defendant] could flout the law at will….This grammatical haggling is unmoored in the law…. These conditions are also 'prerequisites,' and 'the *sine qua non*' of federal funding, for one basic reason: if the University had not agreed to comply with them, it would not have gotten paid.

461 F.3d at 1176-77.

The same logic applies to Boeing's argument here. Boeing's requirement to comply with the DPAS regulations is a condition to being paid under the Air Force One Programs. Contrary to what Boeing argues in its Motion, and as the court held in *Hendow*, "An explicit statement is not necessary to make a statutory requirement a condition of payment, and we have never held as much." *Id.* at 1176. Like in *Hendrow*, "because [Relator has] properly alleged (1) a false

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 13
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due, [his] cause of action under the False Claims Act survives a motion to dismiss. *Id.* at 1177-78.

The court's analysis in *Celgene Corp.* is also instructive. 226 F. Supp. 3d 1032 (C.D. Cal. 2016). In that case, the court faced a similar argument to the one Boeing advances in its Motion concerning the materiality of the regulatory and statutory violations alleged. The court held:

> We are not dealing with an extraneous condition included in a government contract, like the hypothetical requirement to buy American-made staplers discussed in *Escobar*. **Rather, we are dealing with an essential feature** of the Medicare Part D program…. *Escobar* does not foreclose the possibility that a statutory requirement may be so central to the functioning of a government program that noncompliance is material as a matter of law.

*Id.* at 1049 (emphasis added).

Similarly, here the DPAS and other statutory violations alleged are not "extraneous conditions" to the VC-25B Prime Contract. Rather, they are "essential" requirements mandated by Congress, without which the work cannot legally be performed, nor could Boeing legally be paid. Accordingly, these violations are material conditions for payment. *Id.*

The same is true with respect to the Contractor Code of Ethics and financial solvency and competency requirements alleged in Paragraphs 36-40 of the Second Amended Complaint, the Eleventh Circuit in *Marsteller v. Tilton* emphasize the materiality of such violations, holding:

> The Contractor Code of Ethics, which is part of the Federal Acquisitions Regulations and is a mandatory term of acquisitions contracts, requires disclosure of any credible evidence of such conduct. 880 F.3d 1302, 1313 (11th Cir. 2018).
>
> ---
>
> [T]he allegations can be read to support the view that the prospective promise to comply with various provisions of law, including the Contractor Code of Ethics…, were false when made. The Government would not have entered into those had it known of the defendants' unwillingness to comply with these rules. *Id.* at 1314-15.

Accordingly, Relator has plausibly alleged fact, taken as true, showing that the regulatory and contractual violations allege meet this standard for materiality. Indeed, it was Boeing's failure

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 14
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

to comply with these mandatory requirements that caused the Air Force One Program to be over three years late, over a billion dollars over budget, and the United States taxpayers to incur an additional $750 million servicing and maintaining the existing Air Force One aircraft. Dkt. No. 96 at ¶¶ 22-24, 136-148, 156-163.

### B. How the Government enforces similar violations supports Relator's allegations of materiality.

In analyzing how the Government treats similar violations, the Ninth Circuit looks to the three scenarios bearing on materiality that the Supreme Court enunciated in *Escobar*, "though none of them is necessarily required or dispositive." *Rose*, 909 F.3d at 1020-21 (noting that *Escobar* lays out scenarios that can constitute proof of materiality or immateriality, but noting that such proof "is not necessarily limited to" those scenarios). These are: (1) whether there is evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance; (2) whether the Government has paid particular claims in full despite its *actual knowledge* of the violations; and (3) whether the Government regularly pays a particular type of claim in full despite *actual knowledge* that certain requirements were violated, and has signaled no change in position. *Rose*, 909 F.3d at 1020-1021.

*First,* with respect to whether there is evidence that Boeing knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance, Boeing sidesteps the specific example Relator references in the Second Amended Complaint that is directly on point. Dkt. No. 104 at 10-11 (addressing the allegations in Dkt. No. 96 at ¶ 28). This argument is unavailing particularly because the case cited involves Boeing and its false claims made in connection with the V-22 Osprey program.  Dkt. No. 96 at ¶ 28. In that case, the Department of Justice's expressed its views on the materiality of defense contractors like Boeing complying with their contractual obligations and the honesty and integrity of the representations and certifications made to the U.S. Government, stating:

> "The government expects contractors to adhere to contractual obligations to which they have agreed and for which they have been paid."

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 15
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

"Today's settlement demonstrates our commitment to hold accountable contractors who violate such obligations and undermine the integrity of the government's procurement process."

"All government contractors have a responsibility to follow the obligations and protocols set forth by their contracts."

Press Release, *The Boeing Company to Pay $8.1 Million to Resolve False Claims Act Allegations*, (Sept. 28, 2023), *https://www.justice.gov/opa/pr/boeing-company-pay-81-million-resolve-false-claims-act-allegations#:~:text=%E2%80%9CThe%20government%20expects%20contractors%20to,the%20Justice%20Department's%20Civil%20Division*.

The violations undermining the integrity of the government's procurement process at issue here are far more egregious than the ones involved in the V-22 Osprey Program. Here, the false claims and fraudulent conduct involve the $3.9 billion Air Force Program – which is one of the less than 20 DX-A1 rated programs mandating the highest national defense urgency and top-level security within the U.S. Department of Defense. Dkt. No. 96 at ¶¶ 19-28. And, contrary to Boeing's suggestion that GDC was merely responsible for furniture and finishes, the truth is that GDC was the primary subcontractor in charge of the engineering, manufacturing, and design of the next flying National Command Center for the President of the United States. *Id.* It is hard to fathom regulatory and contractual violations that are more material than those at issue in this case. For this reason alone, Relator has plausibly alleged that Boeing's FCA violations are material.

**Second,** Boeing argues in its Motion that the Government's decision not to intervene, as well as the continued payment of funds in connection with the VC-25B Program is evidence that the alleged violations are not material. Dkt. No. 104 at 9-11. This argument misses the mark and misapplies the law in the Ninth Circuit for several reasons. For example, the court in *Aerojet Rocketdyne* addressed the same argument advanced by Boeing regarding the Government's decision not to intervene.  In that case, the defendant also argued that the government's decision not to intervene is some indication that the alleged misrepresentations were not material. 381 F. Supp. 3d at 1248. In dispelling that argument, the court noted that "in *Escobar* itself, the government chose not to intervene and the Supreme Court did not mention it as a factor relevant to materiality….If relators' ability to plead sufficiently the element of materiality were stymied by

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 16
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

the government's choice not to intervene, this would undermine the purposes of the Act," as the FCA allows relators to proceed even without government intervention." *Id.* (citing *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 836 (6th Cir. 2018).

Additionally, Boeing does not rely on or cite any specific allegations regarding the Government's actual knowledge of Boeing's fraudulent course of conduct. Rather, Boeing cites an Order Granting United States' Ex Parte Application for Extension of Time (to intervene) to argue the Government somehow had actual knowledge of noncompliance. *See* Dkt. No. 104 at 11 (citing Dkt. No. 6, the order). The language in that order, however, does not reveal the Government had actual knowledge of Boeing's noncompliance and ignored it because it was not material.

Moreover, awareness of *allegations* concerning noncompliance with regulations is different from *actual knowledge* or full knowledge of the nature and extent of noncompliance. *Celgene Corp.*, 226 F. Supp. 3d at 1049; *Aerojet Rocketdyne*, 381 F. Supp. 3d at 1247-48; *UPPI*, 2022 WL 3594081, at *2. Indeed, even the case Boeing cites on this point requires "actual knowledge" of noncompliance by the Government and, even then, that is not dispositive on the issue of materiality. *See* Dkt. No. 104 at 11 (citing *United States ex rel. Berg v. Honeywell Int'l. Inc.*, 740 F. App'x. 535 (2019) ("if the Government pays a claim in full despite its **actual knowledge** that certain requirements were violated, that is very strong evidence that those requirements are not material.")) (emphasis added).

In the Second Amended Complaint, Relator plainly and plausibly alleges that the Government did not have actual knowledge of Boeing's violations of material regulatory requirements at the time Boeing received hundreds of millions in milestone payments. Dkt. No. 96 at ¶¶ 101-104, 130-151, 162-163, 166-171. Rather, Relator plausibly alleges that Boeing knowingly failed to disclose those violations which were conditions to being paid on the Air Force One Program. *Id.* Accepting these allegations as true, which the Court must, it cannot be reasonably said that the Government continued to pay Boeing's false claims despite actual and full knowledge of Boeing's fraudulent course of conduct.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 17
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

*Third*, even if the Government continued making payments on the VC-25B Program despite having knowledge of Boeing's regulatory/statutory noncompliance, this is not dispositive. *See Campie*, 862 F.3d at 906 (explaining that the significance of the government's decision to continue paying claims can be diminished by the existence of alternative explanations for the decision). The Government may have a variety of reasons for continuing to accept and pay for a good or service, such as providing a critical good or service, that do not reflect a decision that a misrepresentation was immaterial. *See, e.g.*, *Rose*, 909 F.3d 1012; *see also United States v. Public Warehousing Company K.S.C.*, 2017 WL 1021745, at *7 (N.D. Ga. Mar. 16, 2017) (observing that a contract for the necessary supplies for American troops in an active theater of war "could hardly be more essential to an important government interest than that").

These holdings are particularly instructive here. Boeing was the only company capable of overseeing the completion of the next generation Air Force One aircraft, and the Government needed Boeing to continue doing so even after terminating GDC. Dkt. No. 96 at ¶¶ 159-163; Dkt. No. 96-1 at 1 (citing to 10 U.S.C. § 2304(c)(1) authorizing the use of only one source as the prime contractor for this procurement). The Government said as much when it executed the Justification and Approval for Other Than Full and Open Competition in support of Boeing's bid as the prime contractor:

> Boeing is the only firm capable of providing the supplies and services as described in Paragraph III above, and no other type of supplies or services will satisfy USAF requirements. Any source other than Boeing introduces performance and airworthiness risks unacceptable for operation of the Presidential aircraft. Additionally, no other source is available without incurring a substantial duplication of cost that is not expected to be recovered through competition, and without resulting in an unacceptable delay in fulfilling the USAF's requirements.

*See* Justification and Approval for Other Than Full and Open Competition at 8 (Nov. 14, 2017) (to which the Court can take judicial notice).

Simply put, since *Escobar*, numerous courts have found that the Government's failure to act or to continue making payments in the face of false claims is not dispositive and, in many cases, not informative to the issue of materiality. And here, the Government had no choice but to continue

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 18
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

on with using Boeing as the prime contractor for the Air Force One Program despite the delays and damage they caused through their fraudulent course of conduct.

Moreover, Boeing's reliance on *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) in support of its argument that the Government's continued obligation of funds to Boeing weighs against materiality is misplaced. *See* Dkt. No. 104 at 9, 12. In *Kelly*, the Ninth Circuit based its conclusion on the fact that the key statutory violation at issue (*i.e.*, 48 C.F.R. § 252.234-7002) was not expressly incorporated into the prime contract. *Kelly*, 846 F.3d at 334. Here, the material regulatory provisions that Boeing violated were expressly incorporated into, and go to the very essence of, the prime contract with Boeing. *See* Dkt. No. 96 at ¶¶ 29-51; Dkt. No. 96-1 at 1, 14, 16-17, 92-93. Additionally, the Ninth Circuit in *Campie* subsequently distinguished *Kelly* on the basis that, once the regulatory provisions at issue were no longer being violated, which is the case here when Boeing finally terminated the subcontracts with GDC and disclose the impacts to Congress, "the government's decision to keep paying. . . does not have the same significance as if the government continued to pay despite continued noncompliance." 862 F.3d at 907 (denying defendant's motion to dismiss based on materiality).

**Fourth,** Boeing contends that Relator is attempting "to flip his burden of proof, arguing that 'Relator is not aware of any instances in which the U.S. Government has knowingly continued to make payments'" when faced with certain violations." Dkt. No. 104 at 12. However, the fact there are no identifiable instance in which the Government knowingly permits a defense contractor to violate material regulatory provisions such as the DPAS requirements, the NIPSOM requirements, and the security control requirements is itself evidence that the Government does not "regularly pay a particular type of claim in full despite actual knowledge that [these] requirements were violated." *See Rose*, 909 F.3d at 1021. In fact, doing so without express waivers and Congressional approval is prohibited by statute.

Additionally, the Ninth Circuit made clear in *Rose* that Government Accountability Office ("GAO") reports are relevant considerations in connection with assessing the element of materiality. 909 F.3d at 1021-22. In the Second Amended Complaint, Relator cites to the March

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 19
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

2016 GAO Report to Congress wherein the GAO conducted an extensive investigation to address Congress's major concerns with the acquisition process and policies concerning the DOD's major defense acquisition programs. Dkt. No. 96 at ¶¶ 39-40; *See* GAO Report 16-329SP (the "March 2016 GAO Report to Congress"). The stated purpose for the March 2016 GAO Report to Congress was to address Congress's major concerns with cost and schedule overruns on major defense contracting projects, and to identify "key acquisition reform initiatives" to reduce the risk of cost and schedule overruns on major defense contracting programs. The acquisition process concerning major defense acquisition programs was and remains on the GAO's "high-risk" list, further underscoring the materiality of the regulatory and contractual requirements Boeing was required to comply with to continue receiving milestone payments on the VC-25B Program. In fact, the VC-25B Program was one of the specific defense programs that was the subject of the March 2016 GAO Report to Congress. Stated differently, the materiality of strictly following approved defense acquisition strategies, guidelines, and statutes for the Air Force One Program to reduce the risk of schedule and cost overruns was specifically contemplated by the GAO in its March 2016 Report to Congress. Dkt. No. 96 at ¶ 40.

The materiality of the statutory regulations Boeing violated is further illustrated by the Weapon Systems Acquisition Reform Act ("WSARA") Congress passed in 2009 to address systemic schedule and cost overruns the U.S. Government was experiencing on major defense acquisition programs (which includes the VC-25B program). *See* Pub. L. No. 111-23; Dkt. No. 96 at ¶ 34. Its purpose was to implement policies, procedures, and restrictions that would strengthen oversight and accountability in the acquisition process to ensure that costs are controlled and schedules are met. The comprehensive reform under WSARA was designed to ensure compliance with these requirements before the Department of Defense was authorized to release taxpayer funds for major defense acquisition programs such as the VC-25B Program. *See* Sec. 207 of PL 111-23. Given the concerns related to the strict adherence to the Integrated Master Schedule ("IMS") on the VC-25B Program, the WSARA requirements further illustrate the materiality of Boeing's violations of the DPAS requirements. Dkt. No. 96 at ¶¶ 33-35.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 20
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

### C.  The magnitude of the violations alleged support materiality.

Boeing next challenges the plausibility of Relator's allegations relevant to the magnitude factor even though the Court previously inferred that Relator sufficiently alleged the magnitude of Boeing's violations in the First Amended Complaint. Dkt. No. 92 at 24-25.

In *Rose*, the Ninth Circuit analyzed the magnitude of a college's violation of Congress' ban on incentive compensation in the context of enrollment or financial aid at colleges. 909 F.3d 1012 at 1022. The *Rose* court noted that admissions representatives at the college "stood to gain as much as $30,000 and a trip to Hawaii by hitting their enrollment goals," and that this was a far cry from offering up cups of coffee or $10 gift cards for recruiting students. The court held that the tremendous bonuses counsel against a finding that the college's regulatory noncompliance was immaterial. *Id.*

Like in *Rose*, the regulatory/statutory breaches Relator complains of are not "minor or insubstantial"—Boeing steered the plans for Air Force One to a company owned and controlled by the Kingdom of Saudi Arabia which used Government dollars to finish the Kingdom of Saudi Arabia's aircraft to the detriment of Air Force One. The national security concerns and the impact of delays on one of the highest priority Government defense projects goes to the very essence of the prime contract.

The magnitude of Boeing's false certifications and violations is enormous and far reaching. Boeing's decision to outsource the engineering, design, and completion of Air Force One to GDC in violation of the material contractual provisions for the VC-25B Program has resulted in at least a three-year delay in delivering the next generation Air Force One aircraft to the U.S. Government and will cost at least an additional $750 million to maintain the existing Air Force One aircraft (which will be borne by the taxpayers). Dkt. No. 96 at ¶¶ 159-163. Even Boeing acknowledged the magnitude of the impacts in its admissions it made when it sued GDC and filed a proof of claim in the GDC Bankruptcy Proceedings. Dkt. No. at ¶¶ 140-41, 147-151. As such, Relator's has

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 21
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

sufficiently plead the magnitude of Boeing's regulatory violations and fraudulent course of conduct.

In conclusion, it is important to reiterate that the test of materiality is a non-exclusive factor test, not an element test. Relator has alleged sufficient facts touching on each of the non-exhaustive "materiality" factors. On balance of the "materiality" factors, the Court should find that the Second Amended Complaint contains sufficient allegations to demonstrate "materiality" and deny Defendants' Motion.

**III.   Relator plausibly states a claim against Dunmire.**

Defendants argue that the Second Amended Complaint is devoid of particularized allegations of fraud against Dunmire. Dkt. No. 104 at 23-24. Specifically, Defendants argue that Relator's FCA claims against Dunmire rest on the allegation that Dunmire received incentives/kickbacks in exchange for his role in steering contracts to GDC and intentionally interfering in the source selection process. For Relator to sufficiently plead a claim against Dunmire, he need not include allegations individualized to Dunmire. Relator alleges that Dunmire and Boeing worked in concert to wrongfully steer the Air Force One subcontracts to GDC. *See, e.g.*, Dkt. No. 96 at ¶¶ 62, 68, 74-75, 81-83, 98, 101-102, 111-114, 117, 179.

In *Swoben*, the Ninth Circuit recognized that "[t]here is no flaw in a pleading…where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." 848 F.3d at 1184. The Ninth Circuit affirmed and clarified this rule in *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677-78 (9th Cir. 2018), analogizing conspiracies as chains and wheels. A "chain" conspiracy is one where each person is responsible for a distinct act within the overall plan, while a "wheel" conspiracy involves a single member [GDC] agreeing with other members or groups [Boeing and Dunmire]. *Id.* at 678. Collective allegations can be made in wheel conspiracy cases. *Id.* Because Boeing and Dunmire are alleged to have engaged in the same conduct, there is no reason for Relator to differentiate among the allegations common to the group. *Silingo*, 904 F.3d at 678.

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 22
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Alternatively, Relator has sufficiently alleged Dunmire's role in the fraud which, in essence, is: "Dunmire oversaw all head-of-state aircraft for Boeing" (Dkt. No. 96 at ¶ 74) and intentionally steered the VC-25B Subcontracts to GDC in exchange for kickbacks and other *quid pro quo* by conducting secret meetings with GDC to coach it through the Air Force One Subcontracts' bidding process and running interference against other bidders, all despite knowing that GDC was insolvent and controlled by the Saudi Government. *See, e.g.*, Dkt. No. 96 at ¶¶ 62, 68, 74-75, 81-83, 98, 101-102, 111-114, 117, 179. For either reason, the Court should find that Relator sufficiently pled a claim against Dunmire.

**IV.     Relator plausibly states claims for conspiracy and overpayment.**

Defendants correctly assert that Relator's claims for conspiracy and overpayment claims depend on the existence of an underlying FCA claim. Because Relator has adequately pled an FCA claim (for the reasons stated above), the conspiracy and overpayment claims must also survive Defendants' Motion.

**V.      Alternatively, the Court should grant leave for Relator to amend his Complaint.**

If the Court dismisses Relator's claims (it should not), it should do so without prejudice. As grounds for such request, Defendants assert that they "are burdened each time they must respond to Bashir's shifting allegations." Dkt. No. 104 at 24-25. This conclusory allegation fails to demonstrate prejudice sufficient to deny Relator leave to amend.

 In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But prejudice is the touchstone of the inquiry: Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – Page 23
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

under Rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC*, 316 F.3d at 1052. Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987). The party opposing amendment bears the burden of showing prejudice. *Id.* at 187.

Defendants cannot carry their burden to demonstrate prejudice here. As the Court noted in its Order, "This case is . . . in its infancy. The Court has not issued a scheduling order and the parties have not conducted any discovery." Dkt. No. 92 at 28. The parties are in the same position today. Defendants have not carried their burden to demonstrate prejudice or a strong showing of any of the remaining *Foman* factors. Relator's lone opportunity to amend its live pleading following the Order does not entitle Defendants to a dismissal of Relator's claims with prejudice to refiling. *See Expeditors Int'l of Washington, Inc. v. Santillana*, No. 2023 WL 1879470, at *10 (W.D. Wash. Feb. 10, 2023) (the Court permitting further amendment following a second motion to dismiss pursuant to Rule 12(b)(6)). Accordingly, to the extent the Court determines that the Second Amended Complaint is deficient, Relator requests, and the Court should grant, leave to amend its live pleading.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Relator respectfully requests that the Motion be denied or, in the alternative, grant Relator leave to further amend his live pleading, and for such other and further relief to which he may be justly entitled.

I certify that this memorandum contains 7,885 words, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 31st day of May, 2024.

s/ *Sarah E. Derry*
Darin M. Dalmat, WSBA No. 51384
Sarah E. Derry, WSBA No. 47189

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 24
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

**BARNARD IGLITZIN & LAVITT LLP**
18 W Mercer St, Suite 400
Seattle, WA 98119
Tel: (206) 257-60
Fax: (206) 378-4132
dalmat@workerlaw.com
derry@workerlaw.com

_/s/ Trey Crawford_
**Trey Crawford** (_admitted pro hac vice_)
Texas State Bar No. 24059623
tcrawford@cwl.law
**Dave Wishnew** (_admitted pro hac vice_)
Texas State Bar No. 24052039
dwishnew@cwl.law
**Michael J. Lang** (_admitted pro hac vice_)
Texas State Bar No. 24036944
mlang@cwl.law

**Crawford, Wishnew & Lang PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 817-4509

_Attorneys for Relator Ahmed Bashir_

PLAINTIFF RELATOR'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS – Page 25
Case No.  2:19-cv-00600-LK

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**