1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, *ex rel.*
AHMED BASHIR,

          Plaintiff,

    v.

THE BOEING COMPANY, *et al.*,

          Defendants.

No. 2:19-cv-00600-LK

REPLY BY DEFENDANTS
THE BOEING COMPANY AND
JERRY DUNMIRE IN SUPPORT
OF MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT

Note on Motion Calendar:
July 12, 2024

Oral Argument Requested

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK)

1

## TABLE OF CONTENTS

2
Page

3  Introduction ................................................................................................................. 1

4  Argument ..................................................................................................................... 2

5      I.     Bashir fails to explain how his amendments undermine this Court's
6            conclusion that he did not plead materiality. ............................................. 2

7           A.     Bashir still fails to identify any provision specifically conditioning
                payment to Boeing on regulatory compliance. ........................................... 3

8           B.     Bashir does not allege how the Government enforces the
9                  "particular" requirements that Boeing allegedly violated.......................... 4

10           C.     Bashir does not identify any new allegation relevant to the
                magnitude factor. ....................................................................................... 7

11      II.    Bashir fails to plausibly show any false certification of compliance.................... 8

12           A.     Bashir still fails to plead an express false certification claim. ................... 8

13           B.     Bashir fails to plead an implied false certification claim........................... 9

14      III.   Bashir fails to identify individualized allegations against Dunmire.................... 11

15      IV.   The remaining claims should be dismissed. ....................................................... 12

16      V.    Dismissal should be with prejudice. ................................................................... 12

17  Conclusion ................................................................................................................. 13

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Introduction**

Despite this Court's detailed guidance on what made Bashir's False Claims Act ("FCA") claims deficient, his Second Amended Complaint is not materially different from his last one. And Bashir's Response in Opposition ("Response") fails to address most of Boeing's and Dunmire's arguments demonstrating that his FCA claims fail as a matter of law for multiple reasons.

For one, Bashir still fails to adequately plead the critical materiality element. The Supreme Court and Ninth Circuit have held that it is not enough to allege that an FCA defendant violated some legal requirements; the plaintiff must instead show why the asserted legal violations were so material that they would have caused the Government to withhold payment for the defendant's work. But as this Court previously concluded, Bashir has not plausibly shown that any of "the statutory, regulatory, or contractual requirements" that he says Boeing violated "were 'so central' to Boeing's claims for payment" for work on the Air Force One contracts "that the Government would not have issued progress payments" on those contracts "had it known about the violations." Order 23-24 (quoting *Universal Health Servs. v. U.S. ex rel. Escobar*, 579 U.S. 179, 196 (2016)).

None of Bashir's handful of amended allegations undermines that conclusion. He urges the Court to overlook his own allegation that the Government has continued to pay Boeing after learning of the alleged noncompliance, even though courts have agreed that such payments indicate that the alleged noncompliance was *immaterial*. He asserts that Boeing was required to adhere to numerous important regulations, but without identifying any specific *condition on payment* to Boeing. And he invokes a separate FCA settlement related to an entirely different aircraft plus two generalized legislative actions, none of which involved regulatory violations with any resemblance to the allegations here. In short, nothing in Bashir's few amendments warrants this Court reversing its earlier conclusion finding a lack of materiality.

Bashir also fails to identify any false representations by Boeing. The Motion walked through each of the more than thirty statutes, regulations, and contractual provisions invoked in the Second Amended Complaint and explained why Bashir has not plausibly alleged that Boeing

1   violated any of them. Bashir offers no substantive response. Instead, he merely urges the Court to

2   review over 40 pages of his pleading. Response 8.

3        After multiple failed attempts to plead FCA violations even with the benefit of this Court's

4   guidance, there is no reason to believe Bashir could ever state plausible claims. And Bashir's

5   unsupported five-year-old allegations are causing ongoing prejudice to Boeing. The Second

6   Amended Complaint should be dismissed with prejudice.

7                                          **Argument**

8   **I.     Bashir fails to explain how his amendments undermine this Court's conclusion that
           he did not plead materiality.**

9

10       Bashir has not come close to showing that the various compliance defects he alleges were

11  "so central" that the Government "would not have paid" Boeing "had it known of the violations."

12  *Escobar*, 579 U.S. at 196. He asserts that materiality should be "for a jury." Response 11. But the

13  Supreme Court has already rejected the suggestion that materiality is "too fact intensive for courts

14  to dismiss [FCA] cases on a motion to dismiss." *Escobar*, 579 U.S. at 195 n.6. And contrary to

15  Bashir's contention that he "need only plead enough facts to" justify a "reasonable inference" of

16  liability, Response 11, Bashir "must meet both Rule 8(a)'s plausibility requirements and Rule

17  9(b)'s more demanding particularity requirement," Order 8-10.

18       Of the handful of new allegations arguably relevant to materiality that Bashir added to the

19  Second Amended Complaint, his Response abandons—and thus forfeits—several: about criminal

20  penalties, non-waivable requirements, and supposed congressional deadlines. *See* Motion 12-13 &

21  n.1; *Carvalho v. Equifax Info Servs.*, 629 F.3d 876, 888 (9th Cir. 2010) (allegations not mentioned

22  in the plaintiff's response to a motion to dismiss are "effectively abandoned"). For those few

23  allegations that Bashir's Response does defend, he fails to identify any facts to satisfy the Ninth

24  Circuit's "rigorous" three-factor materiality standard, which is critical to distinguishing a *fraud on*

25  *the Government* from alleged garden-variety regulatory violations. *U.S. ex rel. Kelly v. Serco, Inc.*,

26  846 F.3d 325, 333 (9th Cir. 2017).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

### A. Bashir still fails to identify any provision specifically conditioning payment to Boeing on regulatory compliance.

3

4

The first materiality factor is whether "the Government's payment was conditioned on

5

compliance with the [legal] requirement at issue." Order 24. Bashir asserts that he "methodically

cite[d]" payment conditions by invoking more than twenty allegations across twelve pages of the

6

Second Amended Complaint. Response 12. But the only specific provisions that the Response

7

identifies are the "DPAS [Defense Priorities and Allocations Systems] requirements," referencing

8

Second Amended Complaint paragraphs 29-30. *Id.* Neither paragraph says anything about *payment*

9

*conditions*. Paragraph 29 alleges that Boeing needed to "certify that [it] will follow heightened

[DPAS] standards." *Id.* And paragraph 30 alleges merely that the provision in paragraph 29 was

10

"incorporated into the [VC-25B] prime contracts." *Id.*

11

12

Bashir next argues that "Boeing was required to follow" certain regulations. Response 12.

13

But Bashir conflates whether the regulations *apply* to Boeing (allegedly) with whether they *con-*

*dition payment* to Boeing. He still fails to cite any specific "statute, rule, regulation, or contract

14

that conditions payment on compliance with [applicable] law." *Ebeid ex rel. U.S. v. Lungwitz*, 616

15

F.3d 993, 1000 (9th Cir. 2010).

16

17

Bashir falls back to argue that, even without an express payment condition, certain regula-

tions were "essential to the overall purpose of the Air Force One contract" and thus "condition[s]

18

to being paid." Response 12. No authority supports that proposed dramatic and vague expansion

19

of the FCA, which would convert every purportedly "essential" regulation into a potential *fraud*

20

on the Government. The language that Bashir quotes (at 12-13) from *U.S. ex rel. Brown v. Celgene*

21

*Corp.*, No. 10-cv-3165, 2014 WL 3605896 (C.D. Cal. July 10, 2014), concerns whether a "claim

22

is false," not materiality. *Id.* at *2. Bashir's other cited cases (at 13-14) found *express* payment

23

conditions, not implied "essential" conditions. *See U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d

24

1012, 1020 (9th Cir. 2018); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1176 (9th

25

Cir. 2006); *U.S. ex rel. Brown v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016).

26

And *Marsteller v. Tilton*, 880 F.3d 1302 (11th Cir. 2018) (cited at Response 14), simply remanded for further review because it had rejected the materiality of the plaintiffs' allegations under the pre-*Escobar* "legal landscape." *Id.* at 1313. The court did not say, as Bashir implies, that violations of the Contractor Code of Ethics are always material.

"A misrepresentation is not per se material 'merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment,' or because the Government retains the option to decline payment if it knows of the defendant's noncompliance." Order 23 (citation omitted). Bashir's Second Amended Complaint is even more defective because he fails to identify *any* condition on payment.

## B.    Bashir does not allege how the Government enforces the "particular" requirements that Boeing allegedly violated.

The second materiality factor is "the Government's past enforcement of the requirement, i.e., how it has treated similar violations." Order 24. The Ninth Circuit considers "three scenarios." *Rose*, 909 F.3d at 1020.

*First*, courts consider "whether the [Government] has paid 'a particular claim in full despite its actual knowledge that' the [alleged obligation] was violated, because 'that is very strong evidence that [the alleged obligation is] not material.'" *Id.* at 1021 (emphasis omitted) (quoting *Escobar*, 579 U.S. at 195). Bashir urges the Court to disregard his own allegation about the Government's continued payments to Boeing after learning of its alleged noncompliance, saying that "awareness of *allegations* concerning noncompliance with regulations is different from *actual knowledge* or full knowledge of the nature and extent of noncompliance." Response 16-17. That argument is meritless. While "full knowledge" would obviously provide *even stronger* evidence of immateriality, the Ninth Circuit and other courts have rejected FCA claims based in part on the Government's knowledge of a "[r]elator's fraud allegations." *U.S. ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 (9th Cir. 2018); *see also U.S. ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 542 (10th Cir. 2020) ("Although [the Government] may not have inde-

1    pendently verified [the defendant's] noncompliance—and thus may not have obtained 'actual

2    knowledge' of the alleged infractions—its inaction in the face of detailed allegations from [relator]

3    suggests immateriality."); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) ("The fact that [the

4    Government] has not denied reimbursement for [claims] in the wake of [relator's] allegations casts

5    serious doubt on the materiality of the fraudulent representations.").

6          Bashir's own allegations show that, since he filed his original complaint in April 2019, the

7    Government has continued to obligate funds and make payments to Boeing. 2AC ¶143. The Gov-

8    ernment indisputably investigated Bashir's allegations—for years. Dkt. No. 69 at 4-5. Its continued

9    payments notwithstanding its multiple investigations suggest the Government does not agree that

10   Bashir has identified material violations. *See Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii

11   LLC*, 512 F. Supp. 3d 1096, 1117 (D. Haw. 2021) (relator's "allegations suggest[ed] that the vio-

12   lations [were] *not* material" where the Government neither "refused to pay claims [n]or required

13   repayment of past claims" "even after" relator "filed her previous *qui tam* action").

14         ***Second***, courts consider "whether the [Government] 'regularly pays a particular type of

15   claim in full despite actual knowledge that certain requirements were violated, and has signaled

16   no change in position." *Rose*, 909 F.3d at 1021 (emphasis omitted) (citation omitted). Bizarrely,

17   Bashir attempts to cite his *lack* of evidence as evidence: "the fact [that] there are no identifiable

18   instance[s] in which the Government knowingly permits a defense contractor to violate material

19   regulatory provisions," he says, "is itself evidence that the Government does not 'regularly pay a

20   particular type of claim in full despite actual knowledge that [these] requirements were violated.'"

21   Response 19 (citation omitted). In other words, despite alleging that Boeing violated over thirty

22   legal requirements, Bashir cannot identify a single relevant enforcement action arising from any

23   of them. But Bashir's burden requires him to "allege some facts that show that the government

24   actually does not pay claims." *U.S. ex rel. Durkin v. County of San Diego*, 300 F. Supp. 3d 1107,

25   1127 (S.D. Cal. 2018) (citation omitted). He cannot rely on mere "conclusory" assertions that "the

26

1   [Government] would not have disbursed funding had it known Defendant's [statements] were

2   false." *Id.* (citation omitted).

3        Bashir next points to allegations about a 2016 Government Accountability Office ("GAO")

4   report and the Weapon Systems Acquisition Reform Act of 2009. Response 19-20. Neither is rel-

5   evant to the FCA claims here.

6        For the GAO report, Bashir asserts that "the Ninth Circuit made clear in *Rose* that [GAO]

7   reports are relevant" to materiality. Response 19. But the problem is not GAO reports generally;

8   it is the lack of specificity in the particular report that Bashir invokes. *Rose* proves the point. The

9   Ninth Circuit there considered two GAO reports concerning the specific legal requirement that the

10  defendant allegedly violated. 909 F.3d at 1016, 1021 ("Relators … claim[ed] that Defendant vio-

11  lated the incentive compensation ban … . The first report identifies 32 instances in which schools

12  violated the incentive compensation ban … , and the second documents the [Government]'s

13  responses to those 32 violations."). Bashir, by contrast, relies on an overall "annual assessment"

14  of "major defense acquisition programs." *Defense Acquisition, Assessment of Selected Weapon*

15  *Programs* 1 (Mar. 2016), GAO-16-329SP. He does not cite anything in that report referencing

16  DPAS or any statute or regulation that he claims Boeing violated. Response 19-20. This report

17  thus does not show "how [the Government] has treated similar violations." Order 24.

18       Nor does the Weapon Systems Acquisition Reform Act help Bashir. Here again, Bashir

19  does not identify in this Act any mention of DPAS or the other laws he cites. Response 20. As

20  Bashir says, the statute merely had a "purpose" to "strengthen oversight and accountability in the

21  acquisition process." *Id.* That does not address "similar violations."

22       ***Third***, courts consider what "the defendant knows" about the Government's past enforce-

23  ment of the at-issue legal requirement. *Rose*, 909 F.3d at 1021 (citation omitted). Bashir again

24  invokes Boeing's settlement with the Government concerning the "V-22 Osprey program" and

25  claims his allegations here "are far more egregious." Response 15-16. But the V-22 example (like

26  Bashir's others) does not concern *similar* violations. Whereas the V-22 settlement concerned alle-

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  gations about "manufacturing specifications in fabricating composite components for the V-22,"

2  Bashir's allegations concern the finances, ownership, and qualifications of a subcontractor han-

3  dling interiors for the Air Force One program. Motion 11 (citation omitted).

4  **C.      Bashir does not identify any new allegation relevant to the magnitude factor.**

5  For the final materiality factor, Bashir asserts that this Court already "inferred" that he

6  "sufficiently alleged" the magnitude of Boeing's alleged violations. Response 21. But the Court

7  noted only that some of Bashir's allegations were "relevant to the magnitude factor," Order 24-25,

8  not that he had "sufficiently alleged" it.

9  Bashir otherwise recycles his prior allegations about "national security concerns and the

10  impact of delays." Response 21. As this Court already concluded, "scattered allegations related to

11  the President's safety," "national security concerns, and the impact of delays on such a high-

12  priority Government project" might be "relevant," but they do not establish that the alleged legal

13  "requirements at issue were 'so central' to Boeing's claims for payment that the Government

14  would not have issued progress payments" had it "known about the violations." Order 24-25.

15  In an attempt to bolster his vague allegations, Bashir argues that, "contrary to Boeing's

16  suggestion that GDC was merely responsible for furniture and finishes, the truth is that GDC was

17  the primary subcontractor in charge of the engineering, manufacturing, and design of the [Presi-

18  dent's] next flying National Command Center." Response 16. But the Second Amended Complaint

19  alleges merely that GDC was required to "repair and refurbish" "interior components and monu-

20  ments" (like walls, partitions, and furniture) and was charged with "interior aircraft systems and

21  components." 2AC ¶¶82, 136. Bashir alleges nothing about GDC having any responsibility for the

22  National Command Center or working on *any* of the aircraft's mission systems.

23  Ultimately, none of Bashir's amendments undermines this Court's prior conclusion that he

24  failed to adequately plead materiality. The Court should thus dismiss his FCA claims again.

25

26

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    **II.      Bashir fails to plausibly show any false certification of compliance.**

2            **A.      Bashir still fails to plead an express false certification claim.**

3            This Court rejected Bashir's express certification claim because he "fail[ed] to 'identify a

4    single overtly false representation in any claim for payment Boeing submitted to the government.'"

5    Order 19 (citation omitted). Nothing in Bashir's amendments changes that conclusion.

6            Bashir again relies on broad, unsupported allegations about Boeing falsely certifying "in-

7    accurate and incomplete design drawings." Response 9. This Court explained that those allegations

8    failed to offer "a sufficient factual basis," in part because they were based on "'information and

9    belief.'" Order 20 (citation omitted). Bashir responds (at 9) that this "deficiency has now been

10   cured" because he replaced "[u]pon information and belief," 1AC ¶143 n.87, with "[a]ccording to

11   a former CEO of GDC," 2AC ¶144. But "GDC had five different CEOs from 2013 until [2021],"

12   2AC ¶62 n.19, so Bashir still fails to plead this allegation with particularity. Moreover, he fails to

13   offer *any* allegations about "when" Boeing falsely certified these design drawings or "why" those

14   drawings were false. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

15   (9th Cir. 2011) (citation omitted); *see* Motion 14-15. Nor does he even attempt to defend his failure

16   to cure the other deficiencies this Court found, including that it still is "not even clear from the

17   complaint whether Boeing 'plainly and directly certif[ied] its compliance' with the engineering

18   drawings." Order 20 (citation omitted); *see* Motion 14.

19           Bashir next attempts to rely (again) on his broad allegations that "the FARs and DFARs

20   … require Boeing to certify compliance with these material requirements annually, as well as each

21   time Boeing seeks and obtains progress payments." Response 9. He seems to argue (incompletely)

22   that "Boeing's 'representations and certifications'" were "completed electronically [via] the Sys-

23   tem for Award Management (SAM)" "[p]ursuant to 48 C.F.R. § 52.204-19." Response 9. But like

24   Bashir's allegations about design drawings, his unspecified allegations about Boeing supposedly

25   violating *all* FARs and DFARs lack "a sufficient factual basis" and thus "fail[] to meet Rule 9(b)'s

26   particularity standard." Order 19-20.

**B.    Bashir fails to plead an implied false certification claim.**

Bashir argues that the Supreme Court in *Escobar* left "undisturbed cases holding that a claim is 'false' if it is statutorily ineligible for reimbursement." Response 7. But this Court already rejected that argument: "Under the Ninth Circuit's pre-*Escobar* cases, 'a relator bringing an implied certification claim could show falsity by pointing to noncompliance with a law, rule or regulation that is necessarily implicated in a defendant's claim for payment.' That is no longer so." Order 21-22 (citations omitted). Now, "two additional conditions must be met: first, the claim must 'not merely request payment, but also make[] specific representations about the goods or services provided'; and second, 'the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements [must] make[] those representations misleading half-truths.'" Order 22 (quoting *Escobar*, 579 U.S. at 190); *see also Rose*, 909 F.3d at 1018 (confirming *Escobar*'s two conditions are required).

Bashir simply asserts without analysis that his complaint (1) "*specifically* sets forth the strict contractual, statutory, and regulatory requirements" that Boeing was required to meet and (2) "*very plainly and specifically connects* Boeing's failure to disclose noncompliance with these [legal] requirements" to "hundreds of millions" in progress payments. Response 8 (emphases added). As support for those sweeping allegations, Bashir directs the Court to review over 40 pages of the Second Amended Complaint. *Id.* But nothing in those pages makes his claims plausible.

*First*, Bashir does not contest Boeing's showing (Motion 16-18) that several of the obligations he invokes do not even apply here. For example, Bashir says nothing about the laws that were repealed or that apply only to state sponsors of terrorism. Nor does Bashir dispute that, even if certain regulations were incorporated into the prime contract as he contends, they would not apply here by their terms (e.g., regulations governing "construction" contracts for "public building[s]"). Motion 17-18.

*Second*, Bashir does not rebut Boeing's showing (Motion 18-23) that he fails to offer particularized allegations demonstrating that Boeing *actually violated* any arguably applicable re-

1    quirements. For example, Bashir offers nothing to defend his anti-kickback allegations founded

2    solely "upon information and belief," nor his speculative assertion that GDC must have "provided

3    incentives and kickbacks" because Boeing entered into a $22 billion joint venture with Saudi Ara-

4    bia. 2AC ¶179. Neither meets Rule 9(b)'s requirements. Motion 18-19.

5        ***Third***, even if Bashir could identify a plausible and particularized allegation that Boeing

6    violated an applicable requirement, Bashir's implied certification claim fails because he does not

7    allege that Boeing made any *specific representation* about goods or services *in a claim for pay-*

8    *ment*. *Escobar*, 579 U.S. at 190. This Court recognized (Order 21) that an FCA relator need not

9    "identify representative examples of false claims to support every allegation," *Ebeid*, 616 F.3d at

10   998-999, but *Ebeid*'s pre-*Escobar* "reliable indicia" standard could support, at most, an inference

11   that Boeing submitted claims for payment on the VC-25 contracts. *See Torricer*, 512 F. Supp. 3d

12   at 1113. "Whether the alleged regulatory violations are sufficient to create *liability* under an …

13   implied certification theory … [is a] different question[]." *Id.* "In other words, while relators need

14   not identify specific *claims* that were actually submitted, they must still identify specific *represen-*

15   *tations made in connection with claims* along with 'reliable indicia' that some claims were actually

16   submitted." *United States v. McKesson Corp.*, No. 19-cv-02233, 2021 WL 583506, at *6 (N.D.

17   Cal. Feb. 16, 2021), *aff'd sub nom.* No. 21-15477, 2022 WL 728903 (9th Cir. Mar. 10, 2022). A

18   plaintiff cannot plausibly allege *fraudulent misrepresentations* without alleging what, exactly, the

19   defendant represented. Bashir does not do so.

20       Bashir essentially asserts (Response 7-8) only that Boeing "is in breach of various federal

21   contracts, in violation of numerous laws and regulations, and in receipt of money to which it is not

22   legally entitled." *McKesson*, 2021 WL 583506, at *6. But those vague charges are "precisely what

23   Rule 9(b) aims to preclude." *Cafasso*, 637 F.3d at 1057. "[I]t is not sufficient to allege that claims

24   for payment occurred against the backdrop of 'underlying fraudulent activity,' 'the government's

25   wrongful payment,' or 'a menacing underlying scheme.'" *McKesson*, 2021 WL 583506, at *5

26   (quoting *Kelly*, 846 F.3d at 333); *see U.S. ex rel. Mateski v. Raytheon Co.*, No. 06-cv-03614, 2017

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK) – 10

1  WL 3326452, at *7 (C.D. Cal. Aug. 3, 2017) (plaintiff failed to state an FCA claim by alleging
2  failure to meet "vague and broad contract standards" without identifying "a single specific repre-
3  sentation"), *aff'd*, 745 F. App'x 49 (9th Cir. 2018).

4        In short, nothing in the Second Amended Complaint identifies plausible and particularized
5  legal violations, much less claims for payment containing specific (false) representations by Boe-
6  ing. Bashir cannot rely on broad, factually unsupported allegations that Boeing was required to
7  comply with "all" regulations listed, that it *somehow* failed to do so, and that it received payments
8  for its work.

9  **III.  Bashir fails to identify individualized allegations against Dunmire.**

10        Bashir contends that "he need not include allegations individualized to Dunmire" because
11  "Boeing and Dunmire" allegedly "engaged in the same conduct." Response 22. But Bashir's own
12  cited authority holds that "Rule 9(b) does not allow a complaint to merely lump multiple defend-
13  ants together"; it "requires plaintiffs to differentiate their allegations when suing more than one
14  defendant." *U.S. ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir.
15  2016). And plaintiffs alleging that defendants "engaged in precisely the same conduct" must still
16  "allege particular details of the scheme as applied" to *each* defendant. *Id.*

17        Bashir alternatively asserts that he "sufficiently alleged Dunmire's role in the fraud."
18  Response 23. But his Second Amended Complaint fails to allege any details supporting (or even
19  suggesting) Dunmire's involvement in fraud. He says that "Dunmire oversaw all head-of-state
20  aircraft for Boeing" and "intentionally steered the VC-25B Subcontracts to GDC in exchange for
21  kickbacks and other *quid pro quo*." *Id.* But those vague allegations based "upon information and
22  belief," 2AC ¶195, do not include *any* particularized allegations about when, how, or from who
23  Dunmire supposedly received kickbacks. Motion 23-24. Bashir cannot dispute that "Dunmire had
24  no formal responsibility or involvement with the VC-25B program," 2AC ¶195, nor role in certi-
25  fying compliance. Motion 23-24.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**IV.     The remaining claims should be dismissed.**

Bashir concedes that, if this Court dismisses his FCA claims, Counts 2 and 3 should also be dismissed. Response 23; *see* Motion 24. And Bashir does not dispute that, because the Government declined to intervene, Counts 4 and 5 must be dismissed. Motion 24.

**V.     Dismissal should be with prejudice.**

Finally, Bashir says he should receive yet another opportunity to amend his complaint. Response 23-24. This Court should decline.

For one thing, when moving "for leave to amend a pleading," a party "must attach a copy of the proposed amended pleading as an exhibit to the motion" and indicate how the amendment "differs from the pleading that it amends." LCR 15(a). Bashir has not done so. Nor does he "identify any amendments that [would] cure[] the deficiencies in the second amended complaint." *McElligott*, 2022 WL 728903, at *2.

Moreover, a district court has "particularly broad" discretion to deny leave to amend where the plaintiff has previously received leave and has not amended successfully. *Fidelity Fin. Corp. v. FHLB of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986). And leave to amend is properly denied for futility or "repeated failure to cure deficiencies by amendments previously allowed." *Dos Santos v. Unite Here Loc. 8*, No. 22-cv-01171, 2023 WL 7128635, at *3 (W.D. Wash. Oct. 30, 2023) (citation omitted). Here, this Court previously detailed the deficiencies in Bashir's prior complaint. Order 24-25. But rather than follow the Court's guidance, Bashir merely reprises allegations that the Court found insufficient for materiality and adds a few new *immaterial* allegations that do not move the needle. Bashir's failure to plead plausible claims in the face of this Court's "specific instructions on appropriate pleading" supports denying him leave to amend further. *Arlow v. Cal. Dep't of Corr.*, 168 F. App'x 249, 250 (9th Cir. 2006).

Bashir argues that Boeing has not shown prejudice from another complaint and another round of briefing. Response 23-24. But prejudice is only one ground for denying leave to amend; futility and "repeated failure to cure deficiencies" also qualify. *Dos Santos*, 2023 WL 7128635, at

1 | *3 (citation omitted); *see Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-1052 (9th Cir.

2 | 2003). In any event, requiring a defendant to bear "significant expense and with[stand] protracted

3 | litigation" when a "proposed [amendment] would do little to alleviate the burdens Defendants

4 | already allegedly bear" is prejudicial. *Cortese v. H&R Block Tax & Bus. Servs.*, No. 14-cv-7550,

5 | 2015 WL 13918396, at *3 (C.D. Cal. Aug. 4, 2015). That is the case here, where Boeing and

6 | Dunmire have already been forced to spend five years defending Bashir's unsupported allegations.

7 | **Conclusion**

8 | The Court should dismiss with prejudice Bashir's Second Amended Complaint.

9 |

10 | Dated: June 14, 2024

By: *s/ Steve Y. Koh*
Steve Y. Koh, Bar No. 23284
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
SKoh@perkinscoie.com

*I certify that this memorandum contains 4,200 words, in compliance with the Local Civil Rules.*

Michael R. Huston (pro hac vice)
**PERKINS COIE LLP**
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Telephone: 602.351.8000
Facsimile: 602.648.7000
MHuston@perkinscoie.com

*Attorneys for Defendants The Boeing Company and Jerry Dunmire*

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
(No. 2:19-cv-00600-LK) – 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on June 14, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: June 14, 2024

*s/ Steve Y. Koh*

CERTIFICATE OF SERVICE
(No. 2:19-cv-00600-LK)